IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2021

## MAINOR CANALES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sevier County**
**No. 19414-II  James L. Gass, Judge**

_____

### No. E2020-01040-CCA-R3-PC

_____

Mainor Canales, Petitioner, was convicted of aggravated sexual battery and sentenced to twelve years' incarceration. *State v. Mainor Celin Avilez Canales*, No. E2017-01222-CCA-R3-CD, 2018 WL 2084957, at *5 (Tenn. Crim. App. May 4, 2018). This court affirmed his conviction on direct appeal. Petitioner filed a pro se post-conviction petition and an amended petition through counsel, which the post-conviction court dismissed following a hearing. On appeal, Petitioner argues that he was denied the effective assistance of counsel because trial counsel (1) failed to investigate and present an expert witness; and (2) deprived him of his right to a Rule 11 application to appeal to the Tennessee Supreme Court. Following a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Samantha A. McCammon, Sevierville, Tennessee, for the appellant, Mainor Canales.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Ron C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural History

*Trial and Direct Appeal*

On direct appeal, this court explained the facts of the case:

[Petitioner] was charged with aggravated rape after he was seen carrying the semi-conscious and beaten victim across the parking lot of a bar. The victim, who was severely intoxicated at the time she was assaulted, could not recall the particulars of the assault. At trial, [Petitioner] asserted that he did not have intercourse with her and that her injuries were the result of a fall.

*Mainor Celin Avilez Canales*, 2018 WL 2084957, at *1. At trial, the victim testified that Petitioner approached her at a bar and that she drank and danced with him. *Id*.

The victim testified that when she went outside to smoke, she and [Petitioner] were the only two people outside, and [Petitioner] was touching her and "kept . . . trying to get [her] to have sex with him." The victim testified that she grew frustrated and replied, "No, because you're nothing more than a dirty f***ing Mexican." She stated that she assumed [Petitioner] would leave her alone and she turned to continue smoking her cigarette. She next remembered "spitting out the cherry on my cigarette because it had got knocked into my mouth partially." The victim testified that she had two burns on her lip, and she was "not 100% sure if he actually hit me or hit me with something." The victim recalled begging [Petitioner] to leave her alone, apologizing, and offering to pay him for the drinks. She next remembered lying on her back with [Petitioner] above her and could recall nothing further regarding the assault.

*Id*. The victim's friend, Ms. Angelica Buckner, testified that she saw Petitioner act "handsy" with the victim. *Id*. at *2. The bouncer at the bar, Mr. Jesse Parker, also testified that Petitioner was physically affectionate with the victim. *Id*. Mr. Raymond Stupplebeen, Mr. Dakota Johnson, Mr. Dylan Owens, Mr. Jesse Parker, and Ms. Rebecca Kirby all testified that they saw Petitioner carrying or "dragging" the injured victim, her pants slightly lowered, outside the bar at approximately 11:00 p.m. *Id*. at *2-3. This court noted on direct appeal that "[t]here were no witnesses to testify regarding exactly how the victim sustained her injuries." *Id*. at *2.

This court then summarized the medical testimony:

Mr. Bradley Holt, a paramedic, arrived to find the victim unresponsive, with a "pumpknot" on the right side of her face, other abrasions and lacerations on her face, a bruised torso, the onset of bruising in her upper extremities, and blood coming from both nostrils. The victim's shirt was rolled up, her pants were unbuttoned and unzipped but around her waist, and she was not wearing shoes. The victim did not respond to speech,

touch, or painful stimulation. She remained unresponsive as she was transported in "emergency status," but toward the end of the trip she was able to mouth her name and curl into a fetal position in response to a question asking if she were in pain. Mr. Holt testified that he would have intubated her but was unable to do so because he did not have the appropriate paralytic medication. He opined that her injuries were inconsistent with a ground-level fall. Ms. Cecilia Miller, who was also a paramedic and was driving the ambulance, agreed that the right side of the victim's face was swollen, scraped, and bloody. The victim was sobbing and could not speak. Ms. Miller confirmed that the victim's shirt was up and that her pants were unbuttoned and unzipped but not pulled down. She would have recommended the use of a helicopter to transport the victim if one had been flying that night. She confirmed that the injuries were inconsistent with a fall.

. . . .

Ms. Misty Stamm, a sexual assault nurse examiner, identified a diagram she made of the victim's injuries. The victim had multiple abrasions on her face, swelling, redness, injuries on her right knee, left foot, left shoulder, leg, left elbow, coccyx, and left forearm. Ms. Stamm also found two tears on the victim's labia minora with a small amount of active bleeding. She testified that she had "only seen that sort of injury consistent with a sexual assault," "[l]ikely penetration," but she acknowledged that the tears "[p]ossibly" could have resulted from a consensual sexual act. She also stated that although the victim had a catheter, she had never seen a catheter cause labial tears. She testified that the motive behind rape is often control and domination. The victim told Ms. Stamm that she went to a bar, that a man bought her a shot, that she did not leave [her] drink alone, and that going outside to smoke was the last thing she recalled.

. . . .

[Petitioner] presented the testimony of Ms. Tracy Sisto, a licensed registered nurse, to provide an alternate explanation for some of the victim's injuries. Ms. Sisto, who did not testify as an expert and had not practiced nursing since 2001, testified that catheterization can have adverse effects including bladder puncture and irritation. Irritation would cause burning and pain.

*Id*. at *3-4.

Petitioner testified through an interpreter that the victim went outside the bar with him and that she asked him three times to have sex. *Id.* at *5. He stated that they never had sex but that the victim tripped and fell. *Id.* He said that the fall injured the victim and that he had to carry her back to the bar. *Id.* The jury convicted Petitioner of the lesser-included offense of aggravated sexual battery, for which the trial court imposed a twelve-year sentence, and this court affirmed his conviction on direct appeal. *Id.* at *5, *9. Petitioner did not file a Rule 11 application with the Tennessee Supreme Court.

*Post-Conviction Petition*

Petitioner filed a timely pro se Petition for Post-Conviction Relief and an amended petition through counsel, arguing in part that trial counsel "failed to conduct a reasonable investigation into the facts" and "failed to interview, prepare, and subpoena important fact and expert witnesses." Petitioner also argued that appellate counsel abandoned the case by failing "to timely notify [Petitioner] of his ability to apply to the [Tennessee] Supreme Court to hear his matter[,]" denying Petitioner due process and the effective assistance of appellate counsel.

*Post-Conviction Hearing*

The post-conviction court held a hearing on the petition. We will limit our discussion of the post-conviction hearing testimony and the subsequent order from the court to that which is relevant to the issues raised on appeal.

Trial counsel[1] testified that Petitioner retained him for trial. He said that he did not recall discussing with Petitioner the option of retaining an expert witness. Trial counsel explained that he was aware of the victim's medical records and the sexual assault nurse examiner's report prior to trial. He said that the sexual assault nurse examiner also testified at trial and that she outlined the victim's injuries. Trial counsel stated that, when the sexual assault nurse examiner talked about bruising of the victim's labia, he suggested to the jury that the bruising was a result of catheterization and not sexual penetration. Trial counsel pointed out that Petitioner "wasn't convicted of penetration" because the jury acquitted Petitioner of aggravated rape and convicted Petitioner of aggravated sexual battery. Trial counsel also argued to the jury that the victim's injuries were a result of tripping and falling since she was heavily intoxicated.

Trial counsel recalled that, at trial, he questioned employees of the bar who testified that they saw Petitioner and the victim "making out" while these witnesses were outside

---

[1] The same attorney served as both trial counsel and appellate counsel. For the sake of clarity, we will refer to him as "trial counsel" whether discussing trial or appellate issues.

- 4 -

smoking cigarettes. Trial counsel said that, depending on the witness, the victim and Petitioner were seen walking from the bar to El Primo Market anywhere from twenty to forty-five minutes prior to the victim's returning to the bar with injuries. He explained that no witnesses testified that the victim cried for help or that there were any sounds of a struggle.

Trial counsel explained that, when this court issued its opinion on direct appeal, he sent a copy to Petitioner in prison along with a letter, dated May 8, 2018, informing Petitioner that, if he wished to appeal, he had sixty days to do so. The letter from trial counsel to Petitioner reads in part:

> Pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, if you wish to file an application for permission to appeal in the Tennessee Supreme Court, your application must be submitted **no later** than sixty (60) days from the date that the Court's judgment was filed. In this case, the judgment was filed on May 4, 2018.

(emphasis in original).

Trial counsel explained that his assistant was a registered court interpreter with the Administrative Office of the Courts for the Spanish language and that his assistant translated the letter from English into Spanish. He said that he sent both the English and Spanish letters to Petitioner. Petitioner replied to trial counsel via mail in two different letters, dated June 5, 2018, and July 2, 2018, both of which requested a copy of his file. Trial counsel stated that he sent Petitioner a copy of his file on July 18, 2018. Trial counsel explained that he did not believe there was a basis to appeal this court's opinion to the Tennessee Supreme Court, especially since Petitioner never expressed a desire to appeal.

On cross-examination, trial counsel stated that he always followed the same procedure regarding notice to clients about a Rule 11 application and that only one of his clients ever wished to proceed on a Rule 11.

Trial counsel explained that he called a witness at trial, nurse Tracy Sisto, to testify about the possible damage caused by a Foley catheter. Trial counsel recalled that the trial court would not certify Ms. Sisto as an expert but allowed her to "testify from her knowledge and experience having dealt with that particular issue." Trial counsel stated that he did not know of any other issue at trial that could have been addressed with an expert witness. Trial counsel recalled that, on cross-examination, the sexual assault nurse examiner testified that the victim's injuries could have occurred from consensual sexual contact.

Petitioner testified that he did not understand the legal process for trial because he did not understand American laws. He said that trial counsel always used an interpreter to speak to him. Petitioner stated that he did not recall having any conversations with trial counsel about hiring an expert witness.

Petitioner recalled receiving a letter from trial counsel explaining that he had sixty days to appeal this court's decision to the Tennessee Supreme Court. He explained, "Well, from my perspective, . . . my understanding was I was going to have to get a different person to be able to do that kind of an appeal. I didn't know if he was going to be the one to do that or not." Petitioner stated, "I would have needed help because I'm not sure how to do an appeal to the [Tennessee] Supreme Court and would not have known what they would have needed included in that appeal." Petitioner stated that he never asked trial counsel about the process for appealing to the Tennessee Supreme Court and that he thought a post-conviction petition was the "next step," based on "what people had said to [Petitioner] at the prison."

On cross-examination, Petitioner agreed that he received a letter explaining a Rule 11 appeal but said that he did not know who was supposed to file that appeal for him. He agreed that trial counsel was "constantly available" for questions and that he never asked trial counsel about a Rule 11 appeal.

*Post-Conviction Hearing Order of Dismissal*

The post-conviction court dismissed the post-conviction petition in a written order. It concluded that trial counsel was not deficient for not hiring a medical expert, noting that trial counsel "did offer at trial a nurse who did testify about catheter use and tears that could result from the use or application of a catheter, which were similar to that experienced by the victim." The post-conviction court observed that Petitioner "was acquitted of aggravated rape, and therefore the penetration issues that could be accompanied by other medical testimony would be moot in this case," and the court found "no deficiency in counsel's actions not seeking further expert testimony on the issue."

The post-conviction court also found that trial counsel sent Petitioner a letter, in both English and Spanish, explaining that an application to appeal to the Tennessee Supreme Court was due within sixty days. It found that Petitioner took no action to appeal or to ask trial counsel to appeal within that time frame. The post-conviction court concluded that trial counsel was not deficient in any way and that, even if trial counsel had been deficient, "the likelihood of any different outcome both at the trial and on appeal is nonexistent[.]"

Petitioner now timely appeals.

## Analysis

On appeal, Petitioner argues that trial counsel failed to conduct a reasonable investigation into the facts and failed to interview, prepare, and subpoena important "fact and expert witnesses." Petitioner also argues that trial counsel "failed to timely notify [Petitioner] of his ability to apply to the [Tennessee] Supreme Court to hear his matter[,]" denying Petitioner due process and the effective assistance of appellate counsel.

The State responds that Petitioner has failed to establish that trial counsel was deficient by failing to hire an expert medical witness or that any deficiency prejudiced him. It asserts that Petitioner was not denied his right to appeal to the Tennessee Supreme Court.

### Post-Conviction Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363,

370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### *1. Failure to Call Witnesses*

When a petitioner claims that trial counsel was ineffective for failing to discover, interview, or present a witness in support of the petitioner's defense, such witness should be presented at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As this court has previously stated:

> As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether

- 8 -

further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.

*Id.* Without presenting the witness's testimony at the post-conviction hearing, the petitioner generally cannot establish prejudice under *Strickland*. *Id.* at 758.

Here, the post-conviction court noted that trial counsel presented testimony from a witness who explained how a catheter could cause the damage to the victim's labia. Moreover, trial counsel cross-examined the State's witness who agreed that consensual sex could have caused the victim's injuries. Therefore, trial counsel was not deficient for failing to secure an expert witness to testify to the same thing. Further, Petitioner cannot establish prejudice because he failed to present at the post-conviction hearing an expert witness who would have testified on his behalf. *Id.* Petitioner is not entitled to relief on this issue.

### *2. Failure to File Rule 11 Application to Appeal*

A party is allowed sixty days from the date of the entry of the judgment in the Tennessee Court of Criminal Appeals to file an application to appeal to the Tennessee Supreme Court pursuant to Tennessee Rule of Appellate Procedure 11. *Robert Lee Yates v. State*, No. M2011-00961-CCA-R3-PC, 2012 WL 12931437, at *6 (Tenn. Crim. App. Nov. 2, 2012), *no perm. app. filed*; Tenn. R. App. P. 11. "Unilateral termination of an appeal to the supreme court without notice to the client has been deemed ineffective assistance of counsel." *Guadalupe Mendez v. State*, No. 01C01-9703-CC-00076, 1998 WL 345348, at *4 (Tenn. Crim. App. June 30, 1998), *perm. app. denied* (Tenn. Feb. 1, 1999). Upon the determination that a post-conviction petitioner "was deprived of the right to request an appeal pursuant to Rule 11," the trial court or this court "shall enter an order granting the petitioner a delayed appeal[.]" Tenn. R. S. Ct. Rule 28, § 9(D)(1)(b)(i); *see also* Tenn. Code Ann. § 40-30-113(a) (2020); *Stokes v. State*, 146 S.W.3d 56, 59 (Tenn. 2004). A petitioner is not required "to establish that he would have been granted relief had counsel filed the application for permission to appeal" to be entitled to a delayed appeal. *Jay H. Chambers v. State*, No. E2008-02149-CCA-R3-PC, 2010 WL 444700, at *4 (Tenn. Crim. App. Feb. 9, 2010).

Here, trial counsel sent Petitioner a letter in both English and Spanish, stating, "if you wish to file an application for permission to appeal in the Tennessee Supreme Court, your application must be submitted **no later** than sixty (60) days from the date that the Court's judgment was filed." (emphasis in original). Petitioner wrote back to trial counsel requesting a copy of his file, which trial counsel provided. Petitioner never requested that trial counsel file the application to the supreme court, nor did he ask trial counsel any questions about the procedure, despite admitting that trial counsel was always available to

him to answer questions.  We conclude that trial counsel was not deficient for failing to file a Rule 11 application because he gave Petitioner ample notice and because Petitioner never requested that he file an application.  Petitioner is not entitled to relief on this issue.

## **Conclusion**

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____

ROBERT L. HOLLOWAY, JR., JUDGE